IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARCO CARROTHERS (# 65329)                                                    PLAINTIFF

v.                                                            No. 4:06cv174-P-A

WARDEN DWIGHT PRESLEY, ET AL.                                      DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Marco Carrothers (# 65329), who challenges the conditions of his confinement under 42 U.S.C. § 1983. The plaintiff has also requested preliminary injunctive relief, and the court shall consider that motion, as well. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff alleges that he has been erroneously classified as a "D-custody" inmate, when in fact he is eligible for "C-custody." He also claims that he has repeatedly been exposed to inmates whom he has "Red-tagged[1]," although the plaintiff concedes that he was not physically injured as a result of this exposure. Finally, the plaintiff alleges that Case Manager Maxine Lynch ("Lynch") has retaliated against him for refusing to hand to her an Objective Classification System Score Sheet that Lynch drafted. After the plaintiff refused to permit Lynch to view the Score Sheet, she drafted a Rule Violation Report citing the plaintiff for encouraging a group demonstration (by telling other inmates not to sign the forms that Lynch was using during her rounds). The plaintiff was later found guilty of the rule

---

[1]"Red-tagging" is a procedure in the Mississippi Department of Corrections that an inmate may use to notify prison officials of other inmates who pose a danger to him. Prison officials use the "Red-tag" system to separate such inmates. Inmates within the Mississippi Department of Corrections are not supposed to come into contact with inmates they have "Red-tagged."

violation. The plaintiff alleges that Lynch drafted the rule violation report in retaliation for the plaintiff's refusal to hand her the Score Sheet. For the reasons set forth below, the instant case shall be dismissed for failure to state a claim upon which relief could be granted, and the plaintiff motion for preliminary injunction shall be denied.

## Classification

Inmates have neither a protectable property or liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 450 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citations omitted); Miss. Code Ann. §§ 47-5-99 to -103 (1993). Prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted). The plaintiff has not alleged any extreme circumstances to justify departure from this general rule; as such, the plaintiff's claims against the defendants regarding his classification status shall be dismissed for failure to state a claim upon which relief could be granted.

## Exposure to "Red-tagged" Inmates

The plaintiff claims that the defendants have exposed him to inmate Fredrick Burton, who stabbed the plaintiff fifteen times in a previous incident. Inmate Burton acts as a barber to other inmates, and it was during a trip to the barber that the plaintiff was stabbed in the previous incident. The plaintiff's current allegations, however, state no claim. The plaintiff realized that Burton had access to the plaintiff's housing unit, both as a barber and, apparently, as an inmate

-2-

floor walker.  The plaintiff alerted the prison staff, and eventually Burton was moved away from the plaintiff entirely.  The plaintiff has not seen Burton since December 17, 2005.  The plaintiff did not suffer an attack or any injury at the hands of Fredrick Burton.  The plaintiff also complains that inmates in September 2005, Michael Freeman and Lorenzo Robinson, allegedly well-known Vice Lord gang members, were housed in close proximity to the plaintiff.  Another inmate told the plaintiff that Freeman had orchestrated his move to Unit 32-A to be closer to the plaintiff in order to kill him.  The plaintiff began writing to prison officials about this problem, and, on October 25, 2005, the plaintiff received a letter from Darlester Foster instructing him to fill out a "Red-tag" form for each inmate who put him in fear for his life.[2]  The plaintiff filled out "Red-tag" forms on Freeman and Robinson that very day.  Two days later, the plaintiff was moved from Unit 32-A to Unit 32-B – away from those who pose a threat to him.  None of the inmates the plaintiff fears are now housed with him or have access to him.  None have attacked him during the time period associated with this action, and none have injured him in any way.  As such, the plaintiff's claims regarding exposure to inmates he has "Red-tagged" shall be dismissed for failure to state a claim upon which relief could be granted.

## Retaliation

The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive

---

[2]The court wonders why the plaintiff needed such prompting.  Earlier in his complaint the plaintiff stated that he "Red-tagged" Fredrick Burton in 2003.  Certainly, the plaintiff, who has been in protective custody over a period of years, had known about the "Red-tag" procedure long before 2005.

the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). In this case, the plaintiff must prove that he engaged in constitutionally protected activity, faced a consequence of staying in the same custody level, and that such action was taken in an effort to chill his access to the courts or to punish him for exercised his constitutional rights. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). In such cases, the plaintiff must show more than his "personal belief that he is the victim of retaliation." *Edwards*, 51 F.3d at 580. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). None of the elements of a retaliation claim can be found in this case.

First, the plaintiff did not engage in a constitutionally protected activity. The plaintiff alleges that Case Manager Maxine Lynch ordered the plaintiff to pass to her an Objective Classification System Score Sheet that Lynch had drafted. The plaintiff refused, pulling the document back into his cell. The plaintiff has not alleged a constitutional right to disobey Lynch's order. The paper was not from an attorney; as such the plaintiff cannot claim attorney-client privilege. The paper was not privileged in the legal sense – or even private in some personal sense. Indeed, according to the plaintiff, Lynch herself had drafted the document, which was in her handwriting. As the document in question was not privileged in any way, Lynch, as a member of the prison staff, could legitimately order the plaintiff to hand it to her. The plaintiff's act of refusing Lynch's order was not protected under the Constitution; as such, the first prong of the test for retaliation has not been met.

Second, the plaintiff has not established that Lynch harbored a retaliatory motive in drafting the Rule Violation Report. At a hearing on the matter, the plaintiff was found guilty of the rule infraction – yelling to other inmates and causing them to become loud and boisterous. The finder of fact at the hearing believed the evidence against the plaintiff. In addition, the plaintiff admits that the consequence at issue is not the finding of guilty on the Rule Violation Report, but the fact that the plaintiff remains in D-custody. Unfortunately for the plaintiff's claim, Lynch is not the person who decides the plaintiff's custody level; that decision rests initially with Darlester Foster, Associate Warden of Area III, and finally with Pamela Robinson, the Assistant Director of Offender Services. Darlester Foster recommended the plaintiff for "C-custody," but Pamela Robinson disapproved the custody upgrade because the plaintiff has been validated as a "disruptive [Security Threat Group] core member." Thus, from the record provided by the plaintiff, the denial of his custody upgrade was not a result of the Rule Violation Report or the additional points added on his point sheet from the finding of guilty on that Rule Violation Report. That decision was based, instead, on the plaintiff's status as a disruptive core member of a prison gang. As such, the plaintiff has not stated a claim against any defendant for retaliation, and his retaliation claim must be dismissed.

**Preliminary Injunction Standard**

A party must prove four elements to be entitled to preliminary injunctive relief: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not disserve the public interest. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th

Cir. 1996). As discussed above, the plaintiff's underlying claims have no merit. As such, he cannot meet the first element to support his request for a preliminary injunction – substantial likelihood of success on the merits. For this reason, the instant request for a preliminary injunction shall be denied.

In sum, all of the plaintiff's claims are without merit; his motion for preliminary injunction shall be denied, and the instant case shall be dismissed with prejudice for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 31st day of January, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE